JOHN BAXTER DONALDSON, Appellant, *v*. FRANK A. GRANT et al., Respondents.

Notes—Mortgages—Non-negotiability—Record of Assignment—Personal Judgment.

1. The stipulation in a note which includes the covenants of a mortgage by which the maker agrees to pay the taxes on the property, assessments, insurance, and waste, renders the note non-negotiable.

2. Under sections 2613, 2645, Comp. Laws Utah 1888, the assignee of a mortgage is required to have the assignment recorded in order to give notice to subsequent grantees, mortgagees, and lienholders; and the indorsement and delivery of the note, upon which the mortgage is given, to the assignee, is equivalent to an assignment and delivery of the mortgage to him also.

3. Under section 3460, Comp. Laws Utah 1888, property mortgaged must be subjected first to the payment of the debt, and the mortgagee or assignee of the note cannot recover a personal judgment unless the proceeds of the sale of the property mortgaged prove to be insufficient.

(No. 802.  Decided July 14, 1897.)

Appeal from the Third district court, Salt Lake county. Hon. John A. Street, *Judge.*

Action by John Baxter Donaldson against Frank A. Grant and others. From judgment for defendants plaintiff appeals. *Affirmed.*

It appears from the evidence and findings in this record that the plaintiff was a resident of London, England, at the time of the transactions mentioned in the pleadings, and that the defendants resided in Salt Lake City, Utah; that in 1891 the plaintiff and defendant Bache agreed to engage in the business of loaning money at the last-named place; that the plaintiff was to obtain the money to be loaned, and Bache was to make the loans, and they were to share equally in the profits of the business; that in the latter part of the same year and in 1892 the plaintiff transmitted to Bache at different times amounts aggregating $10,800, and on January 25, 1892, the latter loaned of that amount $2,000 to defendant Grant, and took his note for it, payable in five years from its date, with annual interest at 7 per cent., and a mortgage on Grant's real estate to secure it. The note contained the following provision: "If default be made in the payment of any of the interest after it becomes due, or failure to comply with any of the conditions or agreements contained in the mortgage given herewith, then said principal sum, with the accrued interest thereon, shall, at the option of the holder of the note, become due and payable, and shall be collected without further notice. This note and accompanying coupons are to draw interest at the rate of ten per cent. per annum after maturity until paid." The mortgage contained covenants for the payment of taxes, assessments, and insurance, and against waste. It appears

that Grant knew at the time he received the money from
Bache that it was furnished by the plaintiff. On Janu-
ary 27, 1892, Grant executed a deed of the land to Bache,
containing a statement that the conveyance was sub-
ject to the mortgage, in consideration of which the latter
deeded him other land valued at $2,200, and agreed to
surrender the note sued on, making the consideration
$4,200. Soon after making the loan, Bache assigned the
note sued on, with the mortgage, to Donaldson, and on
February 23, 1892, forwarded the same, with the assign-
ment thereon, to the plaintiff; and in the letter accom-
panying them he informed the plaintiff the record title
was in the writer's name, but, if plaintiff desired, he
could record the assignment, and that would take it out
of the writer's power to release the mortgage; that, if
they were left in his name, it would be easier to release
the mortgage than if the assignment was recorded. It
further appears that the plaintiff received the note, mort-
gage, and assignment in March, 1892, and held them
without recording the assignment until the 10th day of
October, 1895; that on July 20, 1892, Bache, to whom the
mortgage was made, entered a release of the mortgage
on the records, and declared it paid and discharged, and
communicated the fact to Grant; that Grant then
demanded his note, and Bache stated that Donaldson
had it, but he would return it, and that no demand for
payment was made upon Grant for more than three years,
nor had he any information that the note was not
regarded as paid and discharged; that, upon the maturity
of the interest coupons, plaintiff sent them to Bache for
collection, and permitted them to remain in his hands
unpaid for about two years, and at no time did he com-
municate with Grant. It further appears that on July
5, 1894, Bache, for a valuable consideration, executed

to Glen Miller a trust deed of the property mortgaged, to secure the payment of his promissory note to defendant MacCord for $1,400; that it was duly recorded on the 8th day of August, 1894, and has never been satisfied; that on July 12, 1895, Bache conveyed the same land to the defendant Mulvey in consideration of a credit of $1,000 on $5,000 indebtedness owed by the former to the latter, which was duly recorded on July 12, 1895; and that Mulvey in good faith credited to Bache the $1,000. It further appears that Bache left the United States prior to the institution of this action, and has remained away, and that he was insolvent.

*Frank Pierce*, for appellant.

The law does not require an assignment of a mortgage to be recorded to import notice. II Devlin on Deeds, § 627; 20 Am. and Eng. Ency. 528; II Demblitz on Land Titles, § 126, 127, note; II Cof. U. 1888, § 2611, 2613, 2644, 2645; *Bamberger* v. *Geiser*, 33 Pac. Rep. 611; *Oregon Trust Co.* v. *Shaw*, 5 Sawyer 336; *Watson* v. *Dundee Investment Co.*, 8 Pac. Rep. 551; I Jones on Mortgages, Sec. 814; *Lee* v. *Clark*, 89 Mo. 556; *Williams* v. *Keyes*, 90 Mich. 290; *Storth* v. *McCain*, 85 Cal. 304; Boone on Mortgages Sec. 92, note 10; *O'Mulcahy* v. *Holley*, 28 Minn. 31; *Burhans* v. *Hutcheson*, 25 Kan. 625; *Joerdan* v. *Schrimpf*, 77 Mo. 386; *DeBruhl* v. *Maas*, 54 Tex. 464; *Kerhane* v. *Smith*, 97 Ill. 159; *Dunn* v. *Snell*, 15 Mass. 485; *Potter* v. *Stransky*, 48 Wis. 244; *Johnston* v. *Carpenter*, 7 Minn. 183; *Kelley* v. *Whitney*, 45 Wis. 110.

In order to overthrow the long established rule that title to securities passes with an assignment and delivery of the note, the controlling statute ought to be very clear and positive in requiring the record of an assignment of a mortgage. *Oregon Trust Co.* v. *Shaw*, 5 Sawyer

336; *Watson* v. *Dundee Investment Co.*, 8 Pac. Rep. 551; *Reeves* v. *Hayes*, 95 Ind. 527.

Mortgagee cannot release the mortgage after the assignment. This is fraud. *Trust Co.* v. *Shaw*, 5 Sawyer 340; *Lee* v. *Clark*, 89 Mo. 556; *Joerdan* v. *Schrimpf*, 77 Mo. 386; I Jones on Mortgages, secs. 814, 961, 962; *Murphy* v. *Barnard*, 44 Am. S. R. 340; *Williams* v. *Keyes*, 30 Am. S. R. 438. The note is negotiable. II Compiled Laws of Utah, 1888, secs. 2,841-49.

Such additional words as the note contains relate to the prompt payment of the note, and are not "any other contract." II Compiled Laws of Utah, 1888, § 2,847. It is not different from the note described in 8 Utah 219, except it contains the clause "or failure to comply with any of the conditions or agreements contained in the the mortgage given herewith." *Smith* v. *Williamson*, 8 Utah 219.

This clause is not different from those contemplated in II Compiled Laws of Utah, 1888, sec. 2,846; *Hughitt* v. *Johnson*, 28 Fed. 865; *Bank* v. *Ry.*, 25 Fed. 809 (811); *Bank* v. *Taylor*, 25 N. W. 81; *Schlesinger* v. *Arline*, 31 Fed. 648; I Daniel on Negotiable Instruments, sec. 61, and notes, p. 77, 4th ed., 62 a.

*Morris L. Ritchie*, *E. E. Ritchie* and *M. E. McEnany*, for respondents.

Section 2613 C. L. U. 1888 provides that—

"Every conveyance of real estate * * * not recorded * * shall be void as against any subsequent purchaser, etc."

Section 2644 reads: "That the term 'conveyance' as used in this act, shall be construed to embrace every instrument in writing by which any real estate, or interest in real estate is created, aliened, mortgaged or

assigned, except wills and leases, etc." "It is settled everywhere that unrecorded assignments of mortgages are void as against subsequent purchasers whose interests may be affected thereby, and whose conveyances are duly recorded, provided such assignments are embraced by the recording acts." *Connecticut Mutual L. I. Co.* v. *Talbot,* 113 Ind. 373.

To the same effect we cite the following cases: *Van Kenren* v. *Corkins,* 66 N. Y. 77; *Westbrook* v. *Gleason,* 79 N. Y. 25; *Brewster* v. *Carnes,* 103 N. Y. 562; *Ladd* v. *Campbell,* 56 Vt. 529; *Swartz* v. *Leist,* 13 Ohio St. 419; *Yerger* v. *Barz,* 56 Iowa 77; *Henderson* v. *Pilgrin,* 22 Tex. 464, 476; Jones on Mortgages, sec. 472; *Girardin* v. *Lampe,* 58 Wis. 267; *Palmer* v. *Bates,* 22 Minn. 532; *Merchant* v. *Woods,* 27 Minn. 396; *Turpin* v. *Ogle,* 4 Bradwell 611; *Trademen Bldg. Asso.* v. *Thompson,* 31 N. J. Eq. 536. And substantially to the same effect: *Lewis* v. *Kirk,* 28 Kan. 497; *Jackson* v. *Reed,* 30 Kan. 10; *Lee* v. *Birmingham,* 30 Kan. 315.

The note in question is non-negotiable.

The conditions and provisions in the mortgage are prohibited in a negotiable instrument by Par. 2847 S. 7 of the Compiled Laws of Utah, 1888, vol. 2. *Brewing Co.* v. *McKittrick,* 86 Mich. 192; *Cayuge National Bank* v. *Purdy,* 56 Mich. 7; *Altman* v. *Frawler,* 70 Mich. 57; *Altman* v. *Ritterschof,* 68 Mich. 287; *Wright* v. *Traver,* 73 Mich. 287; *National Bank* v. *Wheeler,* 75 Mich. 546; *Garretson* v. *Purdy,* (Dak.) 14 N. W. 100; *Scaub* v. *Story,* 45 Mich. 488; *First National Bank* v. *Larsen,* 60 Wis. 206; *Woods* v. *North,* 84 Pa. St. 407; *Jones* v. *Raditz,* 27 Minn. 240; *Bank* v. *Trenton,* 63 Miss. 38; *Hardin* v. *Olsen,* 14 Fed. Rep. 705; *Bank* v. *Bynum,* 84 N. E. 24; *Ned* v. *Newman,* 60 Ind. 584; *Lime Rock Co.* v. *Hewitt,* 60 Me. 407; *Brooks* v. *Hargraves,* 21 Mich. 25; *Mil-*

*ler* v. *Riddle*, 1 Ames on Bills and Notes, 76; 1 Parson on Notes and Bills, p. 42; 1 Daniels on Negotiable Instruments, pp. 34-51; Byles on Bills, 70; *Cook* v. *Satterlee*, 6 Cow. 108; *Austin* v. *Burris*, 16 Barb. 643; *Kellan* v. *Schopes*, 26 Kan. 310.

ZANE, C. J., after stating the facts, delivered the opinion of the court.

The plaintiff insists that the court erred in holding that the note sued on was not negotiable. The mortgage given to secure it contains covenants for the payment of taxes, assessments, and insurance, and against waste; and the maker stipulated in the note that, upon his failure to "comply with any of the conditions or agreements contained in the mortgage, the principal sum, with the accrued interest, should, at the option of the holder, become due and payable, and should be collectible, without further notice." The stipulation made a failure to pay taxes, assessments, or the premium for insurance on the property, or a failure to pay damages on account of waste, a violation of the provisions of the note. By this stipulation the maker of the note became bound to pay indefinite sums of money for taxes, assessments, insurance, and waste; and in case of a failure to do so the payee was given the right to declare the note payable, and to proceed to collect it without notice. The legal effect of this note did not simply bind the maker to pay a definite and certain sum of money, and, in case of failure and suit, the costs of collecting, including attorney's fees. When the promise is to pay a certain sum of money, with an attorney's fee in case of suit brought, the sum to be paid is definite while the note remained negotiable. If suit is brought afterwards, the maker is bound to pay the costs of the suit, including the

attorney's fee. This court held at the present term that a stipulation to pay 10 per cent. on the amount recovered, as attorney's fees, in case of a suit upon it, included in the note, did not render the note non-negotiable. *Salisbury* v. *Stewart*, 15 Utah 308. But by the stipulation now under consideration the maker became bound to pay indefinite amounts for taxes, assessments, insurance, and waste,— unliquidated and unascertained damages. They do not relate to the cost of collecting the note. Though the maker may keep his promise to pay the sum named in the note as principal, and the interest, he is liable in addition to pay taxes, assessments, insurance premiums, and damages for waste. The note was not negotiable.

The note and mortgage sued on were executed to Bache on January 25, 1892, and recorded soon after, and they were assigned to the plaintiff, and transmitted to him at London, where they were received by him in March, 1892; but the assignment was not recorded until October 10, 1895. When Bache executed the trust deed to Miller to secure his note given to MacCord, and when it was recorded, and when the deed to Mulvey was made and recorded, the note and mortgage and the land appeared from the records to belong to Bache; and it does not appear that Miller, MacCord, or Mulvey had any notice that Bache was not the owner, and that he had not the right to satisfy the mortgage and to convey the property. The question is, were the trust deed and conveyance subject to plaintiff's mortgage? Stating the question to be decided in more general terms, does the law require the assignee of a mortgage to have the assignment recorded, in order to give notice to subsequent grantees, mortgagees, and lienholders? The determination of the question depends upon the con-

struction of the following sections of the Compiled Laws of Utah of 1888:

"Sec. 2613. That every conveyance of real estate within this territory hereafter made, which shall not be recorded as provided in this act, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate, or any portion thereof, where his own conveyance shall be first duly recorded."

"Sec. 2645. The term 'conveyance' as used in this act shall be construed to embrace every instrument in writing by which any real estate, or interest in real estate, is created, aliened, or mortgaged, or assigned, except wills and leases for a term not exceeding one year."

The first-mentioned section makes all conveyances of real estate not recorded void, as against subsequent purchasers in good faith for a valuable consideration, when the subsequent conveyance is first recorded. The last section declares that the term "conveyance," as used in the act, shall be construed to embrace every instrument in writing by which any real estate, or interest in real estate, is assigned. While a mortgage under the statute of this state does not vest the title in the mortgagee, it does create a lien in favor of him,—an interest in the land to the extent of the debt secured. It vests an interest in the land according to the provisions of the mortgage. *Thompson* v. *Cheesman*, 15 Utah 43. The lien and interest created by the mortgage to Bache, he assigned to the plaintiff. As the assignment was not recorded, we are not called upon to determine whether it was sufficiently expressed and proven to entitle it to be recorded. If it was not, it should have been; and we have no doubt that the indorsement and delivery of the note to the plaintiff were equivalent to an assignment

and delivery of the mortgage to him also. In consequence of the failure of the plaintiff to record the assignment of his note and mortgage, his lien by virtue thereof became subject to the trust deed to Miller, and the conveyance to Mulvey vested the title in him, discharged from the plaintiff's mortgage. 1 Jones, Mort. §§ 472, 814; *Bacon* v. *Van Schoonhoven,* 87 N. Y. 446; *Ladd* v. *Campbell,* 56 Vt. 529; *Insurance Co.* v. *Talbot,* 3 Am. R. St. Rep. 655.

The plaintiff having lost his right to foreclose his mortgage on the property by his neglect to have its assignment to him recorded, the further question arises, can he maintain his action against Grant, the maker of the note, and the mortgage to secure it? After executing the note and the mortgage to secure it on the land, he conveyed to Bache for $4,200, and Bache deducted that amount from the purchase price. The land was still subject to the mortgage, but Bache assigned the note and mortgage to the plaintiff, who failed to have the assignment recorded, and lost the lien of the mortgage on the land, and now insists upon enforcing the collection of the debt so secured against Grant. If he should be permitted to do so, Grant would lose the $2,000 through plaintiff's negligence. Section 3460, Comp. Laws Utah 1888, declares that there can be but one action for the recovery of a debt or the enforcement of any right secured by mortgage upon real estate or personal property; that the court may direct a sale of the incumbered property, or so much as may be necessary, and apply the proceeds to the payment of costs and the amount due the plaintiff, and, if it appears from the return of the officer making the sale that the proceeds are insufficient, a judgment may be docketed for the balance against the defendant personally liable for the

debt; and that it shall become a lien on the judgment debtor, as in other cases, and that an execution may issue thereon. This section requires the property mortgaged to be subjected first to the payment of the debt, and the mortgagee or any assignee of the note cannot recover a personal judgment unless the proceeds of the sale of the property mortgaged prove to be insufficient. In that case a deficiency judgment may be entered as provided by the section. The supreme court of California have so held in construing a law of that state like ours. *Bank* v. *Casaccia,* 103 Cal. 641; *Society* v. *Thornton,* 42 Pac. 447; *Hopkins* v. *Warner,* 109 Cal. 133; *Barbieri* v. *Ramelli,* 84 Cal. 154. In *Bank* v. *Casaccia, supra,* the court said:

"The obvious purpose of the statute is to compel one who has taken a specific lien to secure his debt to exhaust his security before having recourse to the general assets of the debtor. When he has done this, or when, without his fault, the security has been lost, the policy of the law does not prohibit a personal action." In *Society* v. *Thornton, supra,* the court said: "It may be that if the mortgagor's title to the land has become extinguished subsequent to the making of the mortgage, by title paramount, or if the mortgaged property has been destroyed or ceased to exist, the mortgagee need not go through the idle form of bringing an action for foreclosure before he can have a judgment on the note. But, when the mortgagee by his own act or neglect deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action on the note. He is not permitted, without the consent of the mortgagor, to release the mortgage for the purpose of bringing an action upon the note. He is not authorized to waive the security and bring an action on the in-

15 UTAH—16

dcbtcdness, and whether he releases the security by some affirmative act or by his neglect is immaterial."

In consequence of his failure to record the assignment of the mortgage to him, the plaintiff lost his right to obtain a judgment on the note against the defendant Grant. The judgment appealed from is affirmed.

BARTCH and MINER, JJ., concur.